IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALYSSA DAWN ECKENRODE,            )
                                  )
    Plaintiff,                    )
                                  )
v.                                )   Civil Action No. 12-416
                                  )
MICHAEL J. ASTRUE,                )   Judge Cathy Bissoon
COMMISSIONER OF SOCIAL            )
SECURITY,                         )
                                  )
    Defendant.                    )

## **MEMORANDUM AND ORDER**

### **I. MEMORANDUM**

Plaintiff Alyssa Dawn Eckenrode ("Eckenrode") protectively applied for supplemental security income ("SSI") benefits on October 23, 2009, alleging that she had become "disabled" on October 30, 1995. (R. at 10, 115, 124). Pennsylvania's Bureau of Disability Determination denied the application on February 11, 2010. (R. at 66). Eckenrode responded on April 13, 2010, by filing a request for an administrative hearing. (R. at 54-55). On May 10, 2011, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Douglas Cohen. (R. at 24). Eckenrode, who was represented by counsel, appeared and testified at the hearing. (R. at 27-47). Karen S. Krull ("Krull"), an impartial vocational expert, also testified at the hearing. (R. at 47-51). In a decision dated May 16, 2011, the ALJ determined that Eckenrode was not "disabled" within the meaning of the Social Security Act ("Act"). (R. at 7-20).

On July 4, 2012, Eckenrode sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. (R. at 6). The Appeals Council denied the

request for review on January 30, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner of Social Security ("Commissioner") in this case. (R. at 1). Eckenrode commenced this action on March 30, 2012, seeking judicial review of the Commissioner's decision. (Docs. 1 & 3). Eckenrode and the Commissioner filed Motions for Summary Judgment on August 6, 2012, and September 6, 2012, respectively. (Docs. 6 & 8). The parties' cross-Motions for Summary Judgment are now ripe for disposition.

Eckenrode was born on June 21, 1990, making her nineteen years old on the date of her application and twenty years old on the date of the ALJ's decision. (R. at 19, 115). She attended Butler Area High School until 2008, when she dropped out of school. (R. at 133, 245-354). She testified that she had completed the eleventh grade. (R. at 27). Due to a learning disability, Eckenrode had an individualized education program ("IEP") throughout the course of her educational career. 20 U.S.C. § 1412(a)(4). At the hearing, she stated that she could not read newspapers because they contained "too many big words." (R. at 27). Eckenrode responded in the affirmative when asked whether she could count change. (R. at 27).

At the second step of the sequential evaluation process, Eckenrode was found to be suffering from asthma, a learning disorder, obesity, migraine headaches, and auditory difficulties. (R. at 13). Her asthma, learning disorder, obesity and migraine headaches were deemed to be "severe" under the Commissioner's regulations. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). The ALJ assessed Eckenrode's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb (ramps/stairs only), balance, stoop, crouch, crawl and kneel. She must avoid even moderate exposure to dust, fumes, odors, gases, environs with poor ventilation, wetness, humidity, and temperature extremes. Work activity cannot require any more than the most basic reading/writing and no more than simple addition/subtraction. The claimant is limited to simple, routine, repetitive tasks, not performed in a fast-

2

paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes.

(R. at 15). Eckenrode had no past relevant work. (R. at 18). In response to hypothetical questions describing an individual with the limitations contained in the ALJ's residual functional capacity assessment, Krull testified that the described individual could work as a mail clerk, a ticket taker, an assembler, or a stock clerk. (R. at 47-49). Therefore, the ALJ denied Eckenrode's claim at the fifth step of the analysis. (R. at 19-20).

Eckenrode apparently underwent mental health treatment for attention deficit and hyperactivity disorder when she was a child. (R. at 29). The treatment ended when she reached the age of thirteen, at which point her Ritalin was discontinued at her mother's insistence. (R. at 29). Eckenrode testified that she had been given a prescription for Zoloft roughly one week before the hearing. (R. at 28-31). She attributed that prescription to her "depression." (R. at 29-31). Eckenrode's counsel asked the ALJ to order a consultative psychiatric evaluation for the purpose of discovering the extent to which Eckenrode's mental impairments impeded her ability to work. (R. at 29, 51). Acknowledging the ALJ's "time constraints,"[1] Eckenrode's counsel offered to schedule the evaluation herself and submit the results within two weeks. (R. at 51). At the hearing, the ALJ stated that he would "take [the offer] under advisement." (R. at 51). In his decision, the ALJ denied the request for a consultative examination on the ground that it would not uncover an impairment of sufficient duration to alter his residual functional capacity finding. (R. at 10-11).

Dr. Douglas Schiller, a non-examining psychological consultant, opined on January 12, 2010, that Eckenrode had no medically determinable mental impairment. (R. at 232).

---

[1] According to Eckenrode, the ALJ was preparing to leave the United States for military duty in Iraq. (Doc. 7 at 8 n.1; Doc. 10 at 6).

3

Referring to Eckenrode's obvious "learning disorder," the ALJ accorded "little weight" to Dr. Schiller's opinion. (R. at 18). No mental impairments "outside of [Eckenrode's] learning disorder" were identified. (R. at 10).

A claimant attempting to secure benefits under the Act must demonstrate that both his or her medically determinable impairment (or combination of impairments) and his or her inability to work have lasted (or are expected to last) for a period of at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214-22 (2002). Under the Commissioner's regulations, an impairment must satisfy the twelve-month durational requirement in order to be "severe." 20 C.F.R. § 416.922. The ALJ declined to order a consultative examination on the ground that any mental impairment uncovered by an examiner "would be insufficient to overcome the hurdle of the durational requirement." (R. at 11). He relied on the same line of reasoning to find that Eckenrode had no "severe" mental impairments aside from her learning disorder. (R. at 13).

Social Security disability proceedings "are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (plurality opinion). In this vein, an administrative law judge acting on behalf of the Commissioner has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111. This duty includes an obligation "to develop the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the claimant's ability to work." *Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999). Although the ALJ was free to reject evidence that he did not deem to be credible, he was not free to "reject evidence for no reason or for the wrong reason." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). In this case, the ALJ clearly foreclosed further inquiry into Eckenrode's mental impairments for the wrong reason.

The ALJ denied Eckenrode's request for a consultative examination solely on the ground that such an examination could not uncover a mental impairment of sufficient duration to satisfy the Act's twelve-month durational requirement. (R. at 10-11, 13). That requirement, however, is satisfied when an impairment "*can be expected to last* for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). When the period is viewed prospectively, a claimant can satisfy the durational requirement without showing that his or her impairment has already lasted for twelve months. *Walton*, 535 U.S. at 222-25. To the extent that the ALJ denied Eckenrode's request based on a prediction that a consultative examiner would not detect the existence of an enduring mental impairment, he impermissibly based his conclusion on "speculation or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

The matter would be different if the record contained no evidence of a mental impairment. A claimant bears the initial burden of submitting information about his or her own medical condition. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Nonetheless, the ALJ was placed on notice of a preexisting mental impairment. When she applied for SSI benefits, Eckenrode reported that she had trouble being around more than ten people. (R. at 129). Eckenrode's mother worked as a door greeter at Walmart. (R. at 42). At the hearing, Eckenrode described an instance in which she had been unable to "stay in one spot" while accompanying her mother to work. (R. at 43). The ALJ was informed that Eckenrode had received psychiatric treatment as a child. (R. at 29). There was sufficient evidence of an underlying mental impairment to trigger the ALJ's investigatory responsibility. *Plummer*, 186 F.3d at 434. That is especially true in light of the fact that Eckenrode, through her counsel, affirmatively requested that a consultative psychological evaluation be conducted. (R. at 29, 51).

5

The ALJ appeared to premise his decision on the fact that Eckenrode had failed to present recent evidence of treatment for her mental impairments. (R. at 10, 13). Under ordinary circumstances, a "lack of medical evidence" may constitute "very strong evidence" that no underlying impairment exists. *Lane v. Commissioner of Social Security*, 2004 WL 1217375, *4 (3d Cir. Jun. 3, 2004). The precise circumstances in this case, however, called for further inquiry. Eckenrode testified that her new primary care physician had prescribed medication to alleviate her depressive symptoms just one week before the hearing. (R. at 31). She had apparently started to see a new doctor after learning that she was no longer young enough to be treated by a pediatrician. (R. at 31). The recent change in physicians, when coupled with Eckenrode's young age, may have accounted for her lack of extensive mental health treatment. Furthermore, Eckenrode described instances in which she had unsuccessfully tried to obtain treatment for her mental impairments. (R. at 29). She stated that an appointment had been scheduled to address her psychiatric problems. (R. at 44). Eckenrode acknowledged that she had been insured for health benefits since October 2009. (R. at 29). The ALJ appears to have inferred from this testimony that mental health treatment had been accessible to Eckenrode during the intervening months. (R. at 10, 13, 16). Nevertheless, the record contains no indication as to whether Eckenrode's health insurance covered outpatient treatment for mental impairments. When viewed in context, the documentary and testimonial evidence simply fails to substantiate the assumptions made by the ALJ in determining that a consultative psychiatric evaluation of Eckenrode would be futile.

Acknowledging the limiting effects of the established learning disorder, the ALJ restricted Eckenrode to a range of work involving only basic literary and mathematical tasks. (R. at 15). Although he did not identify another mental impairment, the ALJ limited Eckenrode

to "simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple[] work-related decisions, and in general, relatively few workplace changes." (R. at 15). These limitations are ordinarily attributable to mental impairments. Under these circumstances, however, the Court cannot assume that the ALJ accounted for all limitations resulting from Eckenrode's mental impairments. A consultative examination may have uncovered limitations extending beyond those contained in the residual functional capacity finding. For instance, the record contains testimonial evidence suggesting that Eckenrode may have difficulty performing work requiring frequent interaction with others. (R. at 43, 129). The ALJ's residual functional capacity assessment contains no limitations restricting Eckenrode's contact with supervisors, co-workers, or members of the general public. (R. at 15). The unsupported factual conclusions made by the ALJ cannot be sustained on the basis of speculative assumptions concerning the adequacy of the established limitations.

When questioned by Eckenrode's counsel, Krull testified that no jobs existed in significant numbers in the national economy for an individual who was frequently precluded from staying on task due to headaches, panic attacks and crying spells. (R. at 50-51). Eckenrode argues that the ALJ "improperly disregarded" this portion of Krull's testimony. (Doc. 7 at 18-19). The ALJ was not required to accept every functional limitation *alleged* by Eckenrode. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). To the extent that Krull's testimony was based on unsubstantiated limitations, it did not preclude the ALJ from denying Eckenrode's claim. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987). Nonetheless, the ALJ's failure to permit an adequate inquiry into whether Eckenrode was suffering from additional impairments rendered his residual functional capacity assessment defective. *Plummer*, 186 F.3d at 432-35. Since the underlying residual functional capacity finding was not supported by substantial

7

evidence, Krull's testimony did not satisfy the Commissioner's burden of establishing the existence of jobs in the national economy consistent with Eckenrode's abilities and limitations. *Rutherford*, 399 F.3d at 554 n.8.

For the foregoing reasons, the ALJ's decision cannot stand. The remaining question is whether an immediate award of benefits is warranted, or whether the appropriate remedy is a remand for further consideration of Eckenrode's claim. A judicially-ordered award of benefits is justified only where "the evidentiary record has been fully developed," and where "the evidence as a whole clearly points in favor of a finding that the claimant is statutorily disabled." *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010). That standard is clearly not satisfied in this case. While the consultative psychiatric evaluation sought by Eckenrode may have revealed the existence of additional limitations, it is far from clear that any such limitations would have rendered her unable to work. Accordingly, the proper remedy is a remand for further administrative proceedings.

Eckenrode must be afforded "an opportunity to be heard" during the course of the upcoming proceedings. *Thomas v. Commissioner of Social Security Administration*, 625 F.3d 798, 800-801 (3d Cir. 2010). While the consultative psychiatric evaluation previously requested by Eckenrode may still be needed, it is not necessarily inevitable. Eckenrode testified that she had been prescribed medication for depression shortly before the hearing, and that she was preparing to begin treatment with a mental health counselor. (R. at 30-31, 44). Records of this treatment may provide the Commissioner with enough information about Eckenrode's mental limitations to facilitate a determination concerning her residual functional capacity without the need for a consultative examination. However the Commissioner chooses to proceed, he must be sure to develop the record and provide evidentiary support for his factual findings.

Consistent with the foregoing, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**Doc. 6**) is **GRANTED**, Defendant's Motion for Summary Judgment (**Doc. 8**) is **DENIED**, and this case is **REMANDED FORTHWITH** for further administrative proceedings.

IT IS SO ORDERED.


December 18, 2012                                  s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States District Judge

cc (via ECF email notification):

All counsel of record